UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TASHA HAYNES, *on behalf of* V.W.,

    Plaintiff,

v.

SOUTH BEND COMMUNITY SCHOOL
CORP. *et. al.*,

    Defendants.

CAUSE NO. 3:19-CV-90 DRL-MGG

OPINION AND ORDER

Tasha Haynes sued South Bend Community School Corporation (SBCSC) and Hebard & Hebard Architects, Inc. (Hebard) on behalf of her minor child, V.W., after an accident at Studebaker Center. Ms. Haynes sued SBCSC under the Americans with Disabilities Act (ADA), alleging that SBCSC's failure to comply with ADA standards caused V.W. to fall down a ramp that was too steep. Ms. Haynes sued Hebard for professional negligence. Both defendants request summary judgment. The court grants Hebard's unopposed summary judgment motion and grants SBCSC's contested partial summary judgment motion as to the federal law claims. The court remands any remaining state law claim.

BACKGROUND

On April 17, 2017, a late school bus meant that V.W., a student at Studebaker Center,[1] had to be buzzed into a different entrance to the school [139-7 Tr. 35]. This may not have caused problems for some preschoolers, but V.W. has cerebral palsy and uses a wheelchair—something SBCSC knew [139-20 Tr. 11-12]. His wheelchair and young age meant V.W. relied on a paraprofessional, Markita Kimble, to help him off the bus and into school [139-7 Tr. 23, 25].

---

[1] V.W. was enrolled in the Special Needs and Abilities Program (SNAP) [139-20 Tr. 19].

On this particular morning, V.W.'s paraprofessional wheeled him up the ramp and onto the landing before turning to buzz into the school [139-7 Tr. 26; *see* 141]. When she reached for the buzzer, she released her hold on V.W.'s wheelchair, which rolled down the landing, crashed over a step, and sent V.W., who remained strapped to the chair, face-first into the concrete [141]. The paraprofessional immediately turned and attended to V.W., taking him to the nurse [139-7 Tr. 38].

V.W. suffered a bloody nose and a serious scare, and his mother later took him to the hospital after being called by the school [139-9 Tr. 9-10]. The parties don't dispute that the landing's slope measured at a grade of 2.3 percent, steeper than the 2.08 percent permitted by the Americans with Disabilities Act [139-22 Tr. 59]. They also don't dispute that the school has since repaired the landing to meet ADA requirements [139 at 32 ¶ 22].

SBCSC runs and maintains the Studebaker Center [99 ¶ 3]. The center was built around 1961 and has since undergone surveys to evaluate repair needs [139-15 Tr. 17; 125-6 Tr. 18]. One of these surveys was completed in 1993, and another in 2012 [125-6 Tr. 18; 139-16 Tr. 23-25]. The 1993 survey report was designed to identify the changes needed to bring the older building into ADA compliance [139-16 Tr. 23].

Hebard's architects completed the 2012 report, which was intended to identify repair needs for SBCSC's buildings [139-15 Tr. 25]. The slope of the landing where V.W. fell was not measured during this survey [139-15 Tr. 26-27], though Hebard offered other ADA compliance recommendations [139-15 Tr. 43]. SBCSC staff members relied on the 2012 study and believed that it assessed ADA compliance [139-16 Tr. 21]. However, no one from SBCSC, including a person responsible for ADA compliance, the director of capital projects, Michael Szymanski, inspected the landing at the Studebaker entrance [139-16 Tr. 17]. SBCSC did not have a written policy for inspecting facilities for ADA compliance [139-16 Tr. 24]. The landing where V.W. fell had not been inspected for ADA compliance since the 1993 study [139-16 Tr. 25].

2

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in its favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, viewing all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020). "[I]nferences [] supported by only speculation or conjecture will not defeat a summary judgment motion." *Weaver*, 28 F.4th at 820.

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

A. *Hebard & Hebard Architects, Inc.*

Ms. Haynes sued Hebard, an architecture firm, for professional negligence in its final report—the Facilities Master Plan. Under Indiana law, professional negligence claims require a plaintiff to establish four elements: "(1) a duty which arises from employment of the professional; (2) a breach of duty by a departure from the standard of care, i.e., the exercise of ordinary skill and knowledge (for that profession); and (3) that departure from the standard of care caused injury; and (4) injuries/damages." *Troutwine Estates Dev. Co., LLC v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 900 (Ind. Ct. App. 2006). In negligence

cases, when "there is no genuine issue of material fact and any one of these elements is clearly absent, summary judgment is appropriate." *Pfenning v. Lineman*, 947 N.E.2d 392, 403 (Ind. 2011).

To establish the second element, parties must typically "present expert testimony establishing that standard of care." *Troutwine*, 854 N.E.2d at 902 (citing *Snyder v. Cobb*, 638 N.E.2d 442, 445-46 (Ind. Ct. App. 1994)); *see also Hassebrock v. Bernhoft*, 815 F.3d 334, 342 (7th Cir. 2016). This may be a "bare assertion," *Troutwine*, 854 N.E.2d at 902, albeit some Rule 702 testimony is required, especially because the "standard of care ordinarily expected of architects in executing their obligations is generally not a matter of common knowledge," *Chi. Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1346 (7th Cir. 1983) (quotations omitted).

Hebard argues that the court must grant summary judgment because Ms. Haynes offered no expert evidence on the appropriate architectural standard of care to satisfy the second element of her claim. Ms. Haynes has not provided any expert testimony to establish the standard of care, and she now agrees with Hebard that summary judgment on "any alleged duty and breach thereof" is appropriate. Without the necessary evidence, and absent any real opposition, the court grants Hebard's motion for summary judgment.

B.  *South Bend Community School Corporation.*

Ms. Haynes sued SBCSC for violating Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States… shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." 29 U.S.C. § 794(a). V.W.'s enrollment in the SNAP program satisfies the Rehabilitation Act's federal funding requirement [139-14 Tr. 12; 139-20 Tr. 19].

Ms. Haynes claims that SBCSC's failure to provide accommodations was either obvious, or specifically required by Title II of the ADA and Section 504 of the Rehabilitation Act, and constituted intentional discrimination against V.W. She seeks a declaratory judgment that SBCSC intentionally discriminated against V.W. in violation of the ADA and § 504 of the Rehabilitation Act and a permanent injunction requiring that SBCSC immediately remedy any violations and that SBCSC not discriminate against V.W. in the future. She also seeks compensatory damages. SBCSC argues that Ms. Haynes hasn't shown any evidence of intentional discrimination and that the landing where V.W. fell has been fixed, mooting any request for injunctive relief. The court addresses each issue in turn.

1. *Intentional Discrimination.*

"The relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are materially identical. As a result, courts construe and apply them in a consistent manner, [with] the same analysis." *A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (quotations and citations omitted). A plaintiff must show "(1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of his disability." *Lacy v. Cook Cty.*, 897 F.3d 847, 853 (7th Cir. 2018) (quotations and citations omitted). The "most obvious example of such discrimination is when structural barriers prevent people with disabilities from accessing otherwise available public services." *Id.* The ADA establishes accessibility standards for buildings completed after 1992 but allows "flexible compliance options for facilities built before 1992." *Id.* Failure to provide reasonable modifications constitutes discrimination. *Id.* Studebaker Center was built around 1961, so it had flexible compliance options.

To recover damages on an ADA and Rehabilitation Act claim, the plaintiff also must prove intentional discrimination. *Id.* 897 at 856-57 (citing *Bd. of Educ. v. Ross*, 486 F.3d 267, 278 (7th Cir. 2007); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996)). Intentional discrimination requires a plaintiff to show "(1) knowledge that a harm to a federally protected right is substantially likely and (2) a failure to act upon that likelihood." *Lacy*, 897 F.3d at 857 (internal quotations omitted). "In other words, a plaintiff must prove indifference that is a deliberate choice by defendants." *Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022) (internal quotations omitted).

Deliberate indifference concerns the defendant's state of mind, and the relevant inquiry is what the defendant knew. *Id.* Mere negligence is not enough. *Sayles v. Laporte Cnty. Jail*, 2023 U.S. Dist. LEXIS 85344, 6 (N.D. Ind. May 16, 2023). Turning a "blind eye" to known violations may constitute deliberate indifference, *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015), but "bureaucratic negligence" does not, *Morris v. Kingston*, 368 F. Appx. 686, 689-690 (7th Cir. 2010).

No one disputes that V.W. has a disability or that discrimination because of his disability occurred; the disagreement is whether the discrimination was intentional. SBCSC denies any knowledge of potential harm to a federally protected right. It argues that it wasn't aware of the landing's noncompliant slope—the difference between its actual grade of 2.30 percent and the ADA-mandated grade of 2.08 percent—and didn't know of any past accidents when individuals using wheelchairs had been hurt because of the landing, so nothing put them on notice of potential danger or noncompliance. To support this, SBCSC facilities staff point to two studies on its facilities—one from 1993 by MPA Architects [125-6 Tr. 18], and one from 2012 by Hebard [125-6 Tr. 18].[2]

---

[2] Neither side provides the court the surveys.

Michael Szymanski, one SBCSC employee responsible for ADA compliance, though there were others too,[3] testified that he believed the 1993 study determined that the Studebaker entrance complied with the ADA [125-6 Tr. 18]. Mr. Szymanski also testified that he understood the 2012 report's determination that "[e]ntrances and exits permit sufficient and safe traffic flow and safe entry into the building meets standards" to mean that the entrances complied with the ADA [125-6 Tr. 49]. He said he was unaware of any complaints or incidents involving a wheelchair fall and the front entrance [125-6 Tr. 51]. Understanding that the 2012 report assessed ADA compliance [125-6 Tr. 51], he assumed SBCSC took the necessary steps to bring the buildings into compliance thereafter [125-7 Tr. 28], and the parties agree that this ramp was corrected. The director of facilities, Steve Miskin, also relied on the studies, particularly the 1993 study, and believed that the SBCSC buildings, including Studebaker, complied [125-5 Tr. 40-42]. Like Mr. Szymanski, Mr. Miskin had no knowledge of any prior incidents or injuries related to the Studebaker front entrance [125-5 Tr. 44-45].

Ms. Haynes doesn't dispute SBCSC's honest beliefs outright; instead, she argues that SBCSC employees stuck their heads in the ground and ignored obvious and systematic deficiencies in accessibility to all SBCSC facilities. Ms. Haynes says SBCSC had a policy of ignoring the ADA until someone complained. She argues that SBCSC should have had an ongoing policy in place to inspect and monitor the facilities to ensure ADA compliance. She also says SBCSC's failure to create a clear grievance policy discouraged complaints about a facility. Without such a grievance process, SBCSC could continue to ignore ADA compliance because no one seemingly complained.

Ms. Haynes raises many concerns with SBCSC's approach to the ADA, all important to a dialogue about the best practices for addressing ADA compliance and ensuring accessibility for everyone; but what she argues at most would constitute negligence, which alone isn't sufficient to establish intentional

---

[3] Mr. Szymanski played a role, and he also references Superintendent Todd Cummings (former Director of Human Resources), Director of Special Education Matt Johns, and the Special Education Department as responsible for ADA compliance [139-21 Tr. 35-37].

discrimination under the ADA. *See Lacy*, 897 F.3d at 857; *Morris*, 368 F. Appx. at 690. Nothing Ms. Haynes has presented on this record demonstrates that SBCSC knew that harm to a federally protected right was substantially likely, *see Lacy*, 897 F.3d at 857, or that SBCSC acted deliberately or chose not to act upon the likelihood of such harm, *see Lange*, 28 F.4th at 841. In fact, much of what she offers on this record confirms that SBCSC had no idea of the danger. For example, in response to SBCSC's assertion that there had been no complaints or grievances regarding the entrance to Studebaker, Ms. Haynes argues that there wasn't any evidence that any other person using a wheelchair entered the door where V.W. fell. Rather than establish that SBCSC should have been aware of the substantial likelihood of harm, the record leaves a reasonable jury no basis to conclude anything other than SBCSC had no knowledge or notice of it. Nothing establishes that the slight differential in grade was obvious or self-evident in its need for correction, particularly when architectural surveys had not identified this as an issue of concern.

Ms. Haynes attacks SBCSC's reliance on the two reports. She argues that the 2012 report did not directly address the landing where V.W. fell and that the report wasn't designed to address specific ADA compliance. But SBCSC's Requests for Proposal submitted into evidence specifically asked for programmatic features that included "life safety and Americans with Disabilities Act features of each facility" [139-5 at 4], and otherwise invited comment on ADA compliance [139-5 at 6]. The earlier 1993 report likewise was designed to help bring South Bend Schools into ADA compliance [125-6 Tr. 18]. This has not been meaningfully disputed on this record for a reasonable jury, and SBCSC was not remiss (nor burying its hand in the sand) by relying on professionals to aid with identifying ADA compliance issues so that they could be addressed.

Ms. Haynes cites testimony from Richard Hebard, the lead architect on the 2012 Facility Master Plan [139-19 Tr. 5]. He testified that his firm completed a general assessment; and, rather than measure the slope of landings, his firm conducted a "visual inspection" for code compliance [139-19 Tr. 8]. He denied responsibility for looking at "every nuance of the ADA" [139-19 Tr. 20]. Different understandings

8

of the report don't support a finding of intentional discrimination, particularly when on this record SBCSC defined the scope of work to include ADA compliance review. Under the law, the question here is not one of outside knowledge but instead the defendant's state of mind. *Lange*, 28 F.4th at 841. SBCSC officials reasonably believed the Hebard report addressed ADA compliance, not least when it was requested and when the report made certain recommendations [125-5 Tr. 43; 125-6 Tr. 49]. The record provides no basis for a reasonable jury to conclude that SBCSC relied on these reports pretextually, and speculation alone isn't enough to defeat summary judgment. *See Weaver*, 28 F.4th at 820.

Ms. Haynes characterizes the question as to whether it was good practice for facilities staff to rely on these studies, but the essential inquiry is whether SBCSC knew of violations and turned a blind eye. *See Morris*, 368 F. Appx. at 690; *Lange*, 28 F.4th at 841. She has not explained why relying on these surveys was inappropriate; indeed, it seems the last time ADA standards were revised was 2010 (taking effect March 15, 2012) such that the 2012 survey would have been appropriately timed. This wasn't deliberate indifference to rely on it. No reasonable jury could find that SBCSC intentionally discriminated against V.W. by relying on these two studies.

Finally, Ms. Haynes seems to merge her state law negligence claims against SBCSC with ADA intentional discrimination claims. She argues that SBCSC's procedures surrounding the ADA constitute intentional discrimination. She lists systemic deficiencies, including lack of training, lack of staff qualifications, lack of inspection procedures, lack of a formal grievance policy, and the 23-year period of not measuring the landing's slope and cites several ADA regulations. First, Ms. Haynes says SBCSC failed to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities" by not regularly inspecting the facilities, citing 28 C.F.R. § 35.133(a). But whether SBCSC's policies were or were not ideal, all a jury might reasonably conclude is that SBCSC acted negligently, not with willful blindness toward a known problem, not least when this regulation doesn't require specific procedures. She cites 28 C.F.R. § 35.107(b), which

9

requires public entities with 50 employees or more to "adopt and publish grievance procedures providing for prompt and equitable resolution of complaints" regarding ADA noncompliance. Anyone with an ADA complaint could alert the school for it to be fixed [139-21 Tr. 37-38], and SBCSC says it addressed issues with ADA compliance once it became aware of problems. On this record, Ms. Haynes has not provided any evidence that contradicts this, only an assertion that the policy chilled potential complainants from coming forward.

In short, this record doesn't permit a reasonable jury to find intentional discrimination, so the court grants summary judgment for SBCSC on the compensatory damage claims.

    2. *Injunctive Relief.*

SBCSC also requests summary judgment on Ms. Haynes' claim for equitable relief, arguing that her claim related to the Studebaker landing is moot and that V.W. lacks standing to seek equitable relief for other violations throughout the SBCSC system because there is no evidence that V.W.—or anyone else—has been harmed. The court addresses mootness first, then moves to standing.

To proceed in federal court, a plaintiff needs a "live" claim under Article III. *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1022 (7th Cir. 2016). Without an active controversy, "the claim is moot and must be dismissed for lack of jurisdiction." *Id.* (citing *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 626 (7th Cir. 2007) (quotations omitted)). "It is not enough that the controversy was live at an earlier stage of the case. Article III requires a live controversy throughout the existence of the case." *Hummel*, 817 F.3d at 1023. Structural modifications after an ADA lawsuit may moot the case. *Id.* Here, both parties agree that the sloped landing that caused V.W.'s injury has been brought into compliance with the ADA. The landing was the initial violation listed in the complaint [99 at 4 ¶ 23]. Any equitable relief that V.W. may have sought related to the landing became moot when SBCSC fixed it. *See Hummel*, 817 F.3d at 1023.

The next question is whether V.W. has standing to request equitable relief for violations alleged at Darden Elementary and other SBCSC facilities. *See Straw v. Vill. of Streamwood*, 734 F. Appx. 344, 348 (7th Cir. 2018) ("A plaintiff must demonstrate standing separately for each type of relief he seeks."). Standing requires the plaintiff to show "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redress-ability." *Scherr v. Marriott Int'l*, 703 F.3d 1069, 1074 (7th Cir. 2013). "Plaintiffs always bear the burden of showing they have standing to sue." *Hummel*, 817 F.3d at 1016. Mere allegations are not enough; plaintiffs must present evidence. *Id.* Courts must determine that "plaintiffs have offered evidence of a 'real and immediate'—and not just a 'conjectural or hypothetical'—threat of a future violation of their rights." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Possible future injuries do not suffice. *Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 613 (7th Cir. 2020). Showing a defendant's refusal to modify or make an accommodation is sufficient to state a claim under Title II. *See Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022).

Courts do not order sweeping "obey the law" injunctions. *See EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841-42 (7th Cir. 2013). Courts adhere to "the traditional equitable principle that injunctions should prohibit no more than the violation established in the litigation or similar conduct reasonably related to the violation." *Id.* at 841. Injunctions must "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). Broad injunctions ordering compliance with the law are given only when "some particular action—like withdrawing an accommodation policy—[] convinces the court that voluntary compliance with the law will not be forthcoming." *EEOC*, 707 F.3d at 842-43. "[A]bstract dispute[s] about the law not linked to the rights of a particular plaintiff" do not justify permanent injunctive relief. *Hummel*, 817 F.3d at 1023 (citing *Milwaukee Police Ass'n v. Bd. of Fire and Police Comm'rs*, 708 F.3d 921, 932-33 (7th Cir. 2013)).

SBCSC argues that V.W. has not shown that he or anyone else has been harmed by violations other than the landing, nor has he encountered other violations that have not been remedied. Ms. Haynes responds that V.W. is still enrolled in SBCSC schools, so he is entitled to relief from SBCSC's "continual and flagrant non-compliance with the ADA." Granting a sweeping injunction requiring compliance with the ADA would be a highly-disfavored "obey the law" injunction, *EEOC*, 707 F.3d at 841-42, particularly when this record provides no evidence that SBCSC intends to disregard the law in the future. *See EEOC*, 707 F.3d at 842-43. V.W. doesn't have standing to raise violations at schools he may not attend in the future and doesn't attend now. *See Hummel*, 817 F.3d at 1019 (plaintiffs must seek injunctive relief for their own benefit).

That said, a plaintiff isn't required to wait until tragedy strikes to bring these suits; a substantial risk is enough. *See id.* at 1019-20. V.W.'s attendance at Darden Elementary is not hypothetical, like the injury in *Hummel*, as he is enrolled there now. *Access Living*, 958 F.3d at 614. The ADA was intended to eliminate discrimination by providing access and facilitating accommodation, not just to provide a vehicle for recovery after an injury. *See Lacy*, 897 F.3d at 852. That leaves the question of whether V.W. has standing to request an injunction for the alleged non-compliance issue at Darden, where he is currently a student. Ms. Haynes' response references "numerous ADA violations" but only specifically mentions the lack of accessible parking spaces and an inaccessible park at Darden.[4] To support this allegation, Ms. Haynes directs the court to Exhibit AA, which is a sequence of captioned pictures, without additional context, dated December 21, 2019 [139-27]. There are several problems with premising standing on these images. First, the court would need more information on what these pictures depict and what they allege, and why any conclusion in the caption would be afforded, as unidentified as they are, any weight by a

---

[4] The amended complaint doesn't contain any specific relief requested at Darden or other facilities; and, though pleadings may be amended in summary judgment briefing for legal relief, not when it inappropriately expands factual allegations. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017); *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808-09 (7th Cir. 2014); *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996).

reasonable jury. Second, the pictures do not explain how the violations impact V.W. or pose substantial risk of harm.[5] Third, Ms. Haynes doesn't say whether SBCSC has refused to remedy these alleged violations, and SBCSC informs the court that as it has become aware of other violations, it has addressed them. This is especially relevant because the pictures are dated December 21, 2019 [139-27]. Ms. Haynes hasn't provided evidence on this record that these violations still exist or that the school has refused to remedy them after being notified, calling into question an injunction's necessity today.

Without evidence, even taking the facts in the light most favorable to V.W., the court cannot assume on this record that SBCSC has refused to make the necessary repairs, particularly when SBCSC informs the court that it has made modifications as they have been requested; nor can the court merely assume on this record that there is a basis for particularized harm to V.W. Accessibility and ADA compliance are important, and the parties should continue to treat it as such. That said, this claim for injunctive relief is either moot or without standing, so the court grants SBCSC's motion for summary judgment.

Without a basis for federal question jurisdiction, the court remands Ms. Haynes' remaining state claims. *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) (affirming decision to dismiss state law claim after dismissal of all federal claims in ADA case). Though substantial judicial resources have been expended, they have not vis-à-vis this state claim. Ms. Haynes' claim will return to state court where she originally chose to file, and it is not clear how the remaining negligence claims will be decided. *See Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (although discovery completed, decision was not dispositive of state claims); *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997). That is for the state court to decide.

---

[5] For example, several of the attached images are of a dog park entrance [139-27 at 4-5]. The briefing and materials provide no information about whether this dog park is part of the school or if it is used by V.W., or even if he intends to use it.

3. *Attorney Fees.*

Ms. Haynes requests attorney fees and costs, including expert fees. Prevailing parties may recover attorney fees and other costs, including litigation expenses. 42 U.S.C. § 12205; *see also Lange*, 28 F.4th at 848-49. Ms. Haynes is not the prevailing party in this litigation. *See Karraker v. Rent-A-Center, Inc.*, 492 F.3d 896, 898 (7th Cir. 2007).

## CONCLUSION

Accordingly, the court GRANTS Hebard's motion for summary judgment [151] and DENIES AS MOOT its earlier motion [126]. The court also GRANTS SBCSC's motion for partial summary judgment on the federal law claims [123]. Only Ms. Haynes' state claim for negligence against SBCSC remains. The court REMANDS the case to St. Joseph Superior Court for further proceedings.

SO ORDERED.

March 5, 2024                                        *s/ Damon R. Leichty*
                                                     Judge, United States District Court